W. R. Faulkner v. Commissioner.
W. Faulkner v. Commissioner
Docket Nos. 39295-39298.
United States Tax Court
1954 Tax Ct. Memo LEXIS 297; 13 T.C.M. (CCH) 152; T.C.M. (RIA) 54054; February 17, 1954
*297 1. Petitioner's income redetermined for the years 1946 through 1949. 2. Petitioner was not liable for any income taxes in 1946 and 1947. 3. Parts of the deficiencies for 1948 and 1949 were due to fraud with intent to evade taxes. C. W. Higgins, Esq., 410 Reynolds Building, Winston-Salem, N.C., for the petitioner. George W. Calvert, Esq., and James R. Harper, Jr., Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in and additions to petitioner's income taxes as follows: 50% Addi-
25% Addi-
tion Under
tion Under
Year
Deficiency
Sec. 293(b)
Sec. 291(a)
1946
$ 67.00
$ 33.50
$ 16.75
1947
1,064.57
532.29
1948
1,848.47
924.24
462.12
1949
2,214.64
1,107.32
It is now conceded that the 25 per cent additions for failure to file returns were erroneously applied, respondent having located the returns in question. The issues remaining for decision are whether respondent correctly determined petitioner's taxable income for the years in question and whether petitioner is liable for the 50 per cent addition for fraud in any or all of those years. Findings *298 of Fact Petitioner is an individual residing in Winston-Salem, North Carolina. Federal income tax returns for the calendar years 1946 through 1949 were filed with the collector of internal revenue for the district of North Carolina. During the years involved in this proceeding, the petitioner was married and was the father of two dependent children. Throughout the year 1946 petitioner lived in Charlotte, North Carolina, working as a bellhop in the Charlotte Hotel. His 1946 income tax return showed $69 as wages paid by the hotel and $1,560 as tips, which amount he estimated. Petitioner continued to work as a bellboy at the Hotel Charlotte during the first six months of 1947, after which he moved to Winston-Salem to work as a bell captain for the Robert E. Lee Hotel, hereinafter referred to as the hotel. Petitioner was paid a salary of $50 a month by the hotel in 1947. In 1948 and 1949 he received $150 a month salary after being promoted to superintendent of services from the position of bell captain although his duties did not change. As bell captain, petitioner was in charge of all of the bellboys on his shift. He received from each of them a "kickback" out of the tips received *299 by the bellboys. The amount of the kickback depended upon the shift in question, the rate being $1 per day if the morning shift was worked and $1.50 per day for the evening shift. The average shift during the years in question consisted of five bellboys. Petitioner averaged $30 per week in kickbacks while employed at the hotel. The petitioner was stationed in the lobby when the guests of the hotel were checking in. Occasionally he received tips in cash in each of the years 1947, 1948 and 1949 for favors that he performed, such as obtaining train tickets, calling taxicabs and wrapping packages. These averaged $25 per year during his employment at the hotel. Petitioner was one of two bell captains employed by the hotel. They alternated shifts, working from 7:00 a.m. to 3:00 p.m. one day and from 3:00 p.m. to 11:00 p.m. the next day. The bellboys surreptitiously sold whiskey to guests in 1948 and 1949. On instructions of the petitioner and/or the other bell captain, a bellhop would take an empty suitcase and go to the parking lot in the rear of the hotel. He would meet there an unidentified man in a car that the bell captain had described. The empty suitcase would be exchanged for *300 one filled with whiskey which would be brought into the hotel and locked in the closet of the bellhops' dressing room. The bellhop would not pay for the whiskey. The key to the closet was immediately given to the petitioner or to the other bell captain if he was on duty. On being requested by a guest to obtain whiskey, the bellhop would get the key to the closet from the bell captain on duty, remove the required amount of whiskey and deliver it to the guest. The bellhop usually received $10 per fifth in cash from the hotel guest, kept $3 and gave the remaining $7 to the petitioner or to the other bell captain, along with the key to the closet. The petitioner received income from the sale of whiskey in each of the years 1948 and 1949, which income he did not report on his income tax return. On his Federal income tax returns for 1947, 1948 and 1949, petitioner reported income as follows: 1947
Source
Amount
Hotel Charlotte, Charlotte, N.C.
$ 76.90
Hotel Robert E. Lee, Winston-Salem,
N.C.
1,128.33
Total
$1,205.23
1948
Hotel Robert E. Lee, Winston-Salem,
N.C.
$1,825.00
1949
Hotel Robert E. Lee, Winston-Salem,
N.C.
$1,850.00
Petitioner's gross *301 income for the years in question was as follows: 1946
1947
1948
1949
$1,819.00
$2,002.50
$11,379.50
$12,604.00
Petitioner was not liable for any income taxes in 1946 and 1947. A part of the deficiency for each of the years 1948 and 1949 was due to fraud on the part of the petitioner with intent to evade the payment of Federal income taxes. Opinion ARUNDELL, Judge: These proceedings involve four tax years in each of which respondent determined that petitioner fraudulently failed to report substantial amounts of taxable income. For each of those years we must decide, first, whether respondent properly determined a deficiency and, if so, whether any part was due to fraud with intent to evade income taxes. Although the deficiency notices do not specify the sources of the omitted income, it was abundantly clear from the statements of counsel and in the general posture of the proceedings that the petitioner, who was a bell captain in a hotel, is being charged with having received tips, kickbacks and profits from the sale of liquor which he did not report in his returns. While petitioner kept no records, we are generally satisfied that his testimony *302 as to the amounts of salary, tips and kickbacks he received during the several years was correct notwithstanding the fact that the amounts testified to were, in some cases, considerably in excess of the amounts set forth in the returns. Our acceptance of petitioner's testimony was prompted, in part, by the fact that some support for it is found in the testimony of the three former bellhops called by respondent. Petitioner's testimony to the effect that he never sold any liquor to patrons of the hotel in any of the years we find hard to believe. The three bellhops gave consistent and plausible accounts of the petitioner's part in the sale of liquor in the hotel during the years 1948 and 1949 whereby substantial amounts of money were turned over to the petitioner. Undoubtedly the amount of petitioner's profit therefrom was estimated by respondent but, considering all of the testimony, we do not find that the unreported income determined by respondent is unreasonable or arbitrary. The determination of the deficiencies in tax comes to us as prima facie correct and, in the absence of reliable testimony, there is no course open to us but to accept the deficiencies for 1948 and 1949 as *303 determined, and that we do. The 50 per cent addition to tax for fraud is amply justified as to the years 1948 and 1949 by the omission of substantial amounts of income, including the income derived from the sale of liquor. As to 1946 and 1947, however, we are of the opinion that the deficiencies must be set aside. Petitioner testified that his income for 1946 consisted only of salary and tips as a bellhop and that his income in 1947 was derived entirely from salary, tips and kickbacks. He denies the receipt of income from any other source, including liquor sales, in 1947. The witnesses called by respondent who gave the evidence as to the whiskey sales were employed at the hotel during 1948 and 1949. The testimony of one of the witnesses that he may have worked for the hotel in 1947 is too equivocal on which to base a finding as to that year. There is nothing in the record, therefore, in the way of direct evidence as to the receipt by petitioner of income in 1946 or 1947 from any source other than those testified to by him. We are constrained to hold, under the circumstances, that receipt of profits from the sale of liquor, or any other unlisted source, has not been established *304 to our satisfaction as to 1946 or 1947. We are not unaware that there may be some seeming inconsistency in the conclusion we have reached for 1947 as against our conclusion as to the years 1948 and 1949 but, if it be so, it is due to the generally unsatisfactory nature of the record as a whole and the absence of any direct testimony as to the sale of liquor by the petitioner during the year 1947. As the income of petitioner for 1946 and 1947 as found by us requires a finding that no tax was owing by petitioner in light of the uncontested exemptions claimed by him for himself, his wife and his two children, it follows that there will be no deficiency for either of those years and the matter of the so-called fraud penalties therefore requires no consideration. Decisions will be entered under Rule 50.